OLIN CORPORATION, Plaintiff,

v.

INSURANCE COMPANY OF NORTH
AMERICA, et al., Defendants.

No. 84 Civ.1968(TPG).

United States District Court,
S.D. New York.

Dec. 24, 1997.

Jerold Oshinsky, Stephen A. Dvorkin, Dickstein, Shapiro, Morin & Oshinsky, New York City, Joseph C. Garni, Chief Counsel, Olin Corp., Norwalk, CT, for Olin Corp.

John Altieri, Paul R. Koepff, Charles W. Fournier, O'Melveny & Myers, New York City, for INA.

Wm. Gerald McElroy, Jr., Catherine M. Colinvaux, Zelle & Larson, Waltham, MA, Jerome Murray, Donna Marie Hughes, New York City, for Employers Ins. of Wausau, A Mut. Corp.

Daniel A. Bartoldus, Ginamarie T. Alvino, Rivkin, Radler & Kremer, Uniondale, NY, for Allstate Ins. Co., as Successor to Northbrook Excess and Surplus Ins. Co.

James W. Greene, Bromley, Greene & Walsh, Washington, DC, Jonathan Gardner, Goodkind Labaton Rudoff & Sucharow LLP, New York City, for American Re–Insurance Co., Continental Cas. Co. and Harbor Ins. Co.

David M. Raim, Ellen H. Woodbury, Chadbourne & Parke, L.L.P., Washington, DC, for Nat. American Ins. Co. of California, as Successor to Stuyvesant Ins. Co.

Dale C. Christensen, Jr., R. Scott Garley, Seward & Kissel, New York City, for Hanover Ins. Co.

Richard H. Gimer, Ronald Uitz, Law Offices of Richard H. Gimer, Washington, DC, Theodore M. Greenberg, Aaron Locker, Locker, Greenberg & Brainin, New York City, for Falcon Ins. Co./Commercial Union Ins. Companies/C.E. Heath Compensation and Liability Ins. Co.

Howard B. Epstein, Schulte, Roth & Zabel LLP, New York City, Marian S. Hertz, Sheft, Golub & Kamlet, New York City, James P. Schaller, M. Elizabeth Medaglia, Richard Bryan, Jackson & Campbell, P.C., Washington, DC, for American Home Assur. Co./Lexington Ins. Co./Nat. Union Fire Ins.

Co. of Pittsburgh (Excess)/Franite State Ins. Co.

Marc H. Pillinger, Smith, Mazure, Director & Wilkins, New York City, Howard B. Epstein, Shultze Roth & Zabel LLP, New York City, for Nat. Union Fire Ins. Co. of Pittsburgh (Primary).

Patrick T. Walsh, Brent J. Graber, Blatt, Hammesfahr & Eaton, Chicago, IL, Michael J. Holland, Katherine B. Posner, Condon & Forsyth, for Certain Underwriters at Lloyd's, London and Certain London Market Ins. Companies, London & Edinburgh Ins. Co. and North River Ins. Co.

Jennifer A. Wolfe, Bodian & Eames, L.L.P., New York City, for AETNA Cas. & Sur. Co.

Virginia L. White–Mahaffey, James S. Felt, Steptoe & Johnson, Washington, DC, Joseph DeDonato, Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, New York City, for Home Ins. Co.

Alexander H. Gillespie, Matthew G. Finnegan, Gilbert & Kurent, Washington, DC, Brian R. Ade, Gilberg & Kurent, New York City, for Firemen Ins. Co.

Lawrence L. Flynn, Gottesman, Wogel, Secunda, Malamy & Flynn, New York City, for Great American Ins. Co.

James Stapleton, Stefan Underhill, Carol Chow, LeBoeuf, Lamb, Greene & MacRae, Washington, DC, Suzanne Chalpin Alenick, LeBouef, Lamb, Green & MacRae, New York City, for Government Employees Ins. Co.(GEICO).

Robert W. Mullenberg, McElroy, Deutsch & Mulvaney, Morristown, NJ, for North River Ins. Co.

### OPINION

GRIESA, District Judge.

THE COURT: These are my findings and conclusions with respect to one of the issues left open in my July 3, 1997 opinion,* that is, whether Olin must be deemed to be a self-insurer during the years 1971 to 1985.

* *Olin Corp. v. Insurance Co. of N. Am.,* 972

I am going to start by repeating something I just said in my discussion with Mr. Fournier, but let me go back to the jury verdict before I do that.

We must start with the framework we used at the trial, and the jury verdict at the end of that trial. The issue before the jury was whether there was accidental injury to property, or to put it in slightly different language, arising from the differently worded policy, whether there was property damage which was neither expected nor intended. Just as a shorthand, I am going to speak now of accidental injury because the real meaning of the coverage was not changed despite changes in language, at least the meaning for present purposes was not changed.

The jury found accidental injury to soil only for the years 1956 and 1957, and for purposes of my discussion here, I am going to ignore that injury to soil. I am going to deal with the finding of the injury about groundwater because I think it will illustrate the issues which I believe are of a general nature. Thus, although I am going to discuss what the jury found with respect to the site involved in the recent trial, I am going to refer to these matters as illustrations of what I believe are general considerations.

The jury found that there was accidental injury to groundwater commencing in 1958 and going through 1971. It was conceded that, commencing in 1971, a pollution exclusion appeared applicable to certain policies, and as a result of the jury's findings it is now established that the pollution exclusion was effective in all policies beginning in 1971.

The jury further found that there was injury to property which was a cause of cleanup cost to Olin for the years 1972 through 1985. What this means is that, according to the jury's finding in this case, there was injury to property covered by the insurance for the years 1958 through 1985. The jury further found that there was injury to property although it was not covered by the insurance, and that injury to property extended during the remaining years through 1985.

F.Supp. 189 (S.D.N.Y. 1997).

Olin had general comprehensive liability (GCL) coverage applicable, among other things, to gradual pollution during the years 1956 through 1970. Such coverage ceased commencing in 1971 by virtue of the pollution exclusion. This exclusion was applicable during all of the years 1971–1985.

Due to the nature of gradual pollution, and under the framework which we have used in this case, this was not a situation where there was one injury with consequential damages. This was a situation where there were continual instances of injuries, each of which would be sufficient to be a separate trigger for liability under a policy if the policy were in effect during the particular year.

We start with the proposition that the insurance company is normally liable only for injury occurring during the time covered by the insurance under a general comprehensive liability policy. If the injury or the occurrence does in fact happen during the period of the policy, then there is coverage. If it occurs or happens after the conclusion of an insurer's policy period, it is not the responsibility of that insurance company. This case involves annual policies, and thus, if the occurrence or injury did not happen during the year of coverage, it is not covered by that policy.

If we apply that basic contractual consideration to the present case, we would find that the insurance company was liable for injuries and occurrences happening from 1958 through 1970 because there was coverage and there was no pollution exclusion. If we apply the contracts according to their terms, we could not find coverage for injuries or occurrences happening beginning in 1971 because the pollution exclusions came into effect. So for the period from 1971 through 1985, Olin was simply not covered for gradual pollution under general comprehensive liability policies.

Commencing in 1985, there were orders by governmental agencies for clean-up which imposed costs on Olin. The cost of the groundwater clean-up was about $400,000. According to the jury's findings, this was the result of gradual pollution—a series of "injuries"—occurring over the years 1958–1985.

We know that the nature of gradual pollution does not permit us to literally learn what particular injury occurs in a particular year leading to what particular monetary amount of damages. So proration is necessary. This means dividing the total damages—here $400,000—by the appropriate number of years, and assigning to each year its share.

■ If we apply the proration concept as closely as possible to the terms of the insurance contracts, we would prorate the loss in the situation I am talking about over a period of years from 1958 through 1985, and we would assign a portion of that to the insurance company for the years 1958–1970, and we would assign a portion to Olin, for the years 1971–1985. This is because Olin was not insured during those years.

The result I have just spoken of, however, is somewhat different from the result reached in the Stonewall case, which has been discussed over and over in this proceeding, that is, the Stonewall case in the Second Circuit.** That dealt with asbestos, and what the Court of Appeals did was to hold that, since commencing at a certain point, asbestos liability insurance was no longer available, then there would be no proration over the years of unavailability, and during those years, the insured would not be responsible in the sense that the insured would not be expected to cover its own loss during years when insurance was unavailable.

The result was that the loss occurring from all of the asbestos liability involved in the case was prorated only over the years covered by outside insurers, and when the manufacturer was a voluntary self-insurer. The question we are faced with now is how to apply Stonewall in the present case, and what does Stonewall mean.

After great consideration, and after hearing extensive argument and presentation, here is where I come out on how Stonewall should be applied in the present case:

■ I believe that what I will call the Stonewall exception to the general applica-

** *Stonewall Ins. Co. v. Asbestos Claims Manage-* *ment Corp.,* 73 F.3d 1178 (2d Cir.1995).

tion of insurance contracts, that is, the exception which would relieve an insured of taking responsibility during uninsured years—it is my finding that that exception applies only where insurance is unavailable in the marketplace.

Consequently, if insurance was available in the marketplace to companies such as Olin, then the Stonewall exception does not apply. It is my view that Stonewall should be applied narrowly, and I want to make that clear without any mistake. It is my view that Stonewall should be applied so as to achieve a result as close as possible to what would be the result under the insurance contracts.

I accept Olin's argument that there was a time when insurance for gradual pollution was not available. This occurred commencing with the advent of the pollution exclusion in 1971. I believe and find that, commencing at that time, for all practical purposes Olin could not obtain general comprehensive liability without a pollution exclusion.

However, a substitute form of insurance appeared in the marketplace specifically designed to fill in the gap created by the pollution exclusions in the CGL policies. This new form of insurance was environmental impairment liability (EIL) insurance.

There is an issue about when such insurance was available in the United States to companies such as Olin. The insurance companies here argue that it was available beginning in the mid–70s. Olin argues that it was not available until about 1980. That issue is really irrelevant for the following reason:

The EIL insurance was on a claims-made basis. That is, if insurance coverage of the EIL nature was in effect for a particular insured during a particular year, and if there was not some abnormal time limit placed on that insurance as, this would mean that any claim made during that year would be covered even if that claim related to injury or property damage occurring in prior years.

Consequently, if Olin had purchased an EIL policy in 1980, it could have been insured for claims made in 1980 even though they related to injuries occurring in the 1970s when the pollution exclusion in the GCL policies was in effect. It is clear that

by 1980, at least, EIL coverage was available to major companies such as Olin in the United States. Thus, this was not a situation, at least beginning in 1980, where insurance was unavailable within the meaning of Stonewall.

There has been an enormous amount of evidence about what Olin did or did not do to try to obtain EIL coverage. There has been an enormous amount of evidence about particular insurance companies as to when they were in the market, how strong or how weak they were, how desirable or how undesirable they were from the standpoint of Olin obtaining insurance from them. There has been a great deal of evidence about certain groups of insurers, one in England, which used the initials ERAS, and one in the United States which used the initials PLIA. There has been evidence about whether Olin developed a loss record which would have at some point made it difficult or even impossible to obtain EIL coverage.

There has been evidence that one source of insurance turned Olin down in 1982. There has been evidence that ERAS went out of business in early 1984 at a time when Olin was indeed applying for EIL insurance from ERAS. There has been evidence and argument about whether, in dealing with ERAS, Olin was too slow in moving to obtain that insurance when it was available. There has been a morass of evidence and argument about these particular details.

As stated, EIL insurance was available to companies like Olin in the marketplace beginning at least in 1980. Olin did not obtain such insurance. Olin argues that it was prevented by various circumstances occurring over the years from obtaining the EIL coverage it needed from an insurer which was appropriate for Olin. The insurer defendants contend that Olin had a number of opportunities with various appropriate insurers to obtain the coverage, and that, because of Olin's dilatory conduct and because of its rejecting opportunities to obtain coverage, the result was that Olin went uninsured.

The court frankly states that these contentions present issues which are difficult and uncertain in the extreme. It is inconceivable that Stonewall is intended to thrust the court

into the kinds of evidentiary mazes that have been presented in the present case. It seems to me clear that Stonewall should be applied in a way that poses as simple an issue as possible, as basic an issue as possible and, as I said before, Stonewall should be applied in a way which will come as close to fidelity to the insurance contracts as possible.

Consequently, I am holding that there should be no application of what I will call the Stonewall exception unless the insurance is unavailable in the marketplace to the kind of insured involved in the particular matter.

I am holding that the proration in a case such as was involved in the Williamston, North Carolina site, this proration should take place over all the years of the injury. I am further holding that the insurance company is to pay its share for the years in which insurance coverage existed. I am further holding that Olin will be required to accept responsibility for the years in which injury occurred and in which it did not have insurance in effect.

SO ORDERED.